UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSICA HINTON a/k/a JESSA HINTON, ROSA ACOSTA, TIFFANY GRAY a/k/a TIFFANY TOTH, JESSICA BURCIAGA, LUCY PINDER and CLAUDIA SAMPEDRO, <br><br> Plaintiffs, <br><br> v. <br><br> 167 FERRY ST 1 CORP. d/b/a VIVO TAPAS KITCHEN LOUNGE a/k/a NOAH EN VIVO, <br><br> Defendant. | C.A. No. <br><br> **COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiffs JESSICA HINTON a/k/a JESSA HINTON, ROSA ACOSTA, TIFFANY GRAY a/k/a TIFFANY TOTH, JESSICA BURCIAGA, LUCY PINDER and CLAUDIA SAMPEDRO, (collectively, "Plaintiffs"), file this Complaint against 167 FERRY ST 1 CORP. d/b/a VIVO TAPAS KITCHEN LOUNGE a/k/a NOAH EN VIVO ("Defendant") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, VIVO TAPAS KITCHEN LOUNGE d/b/a VIVO located at 167 Ferry St, Newark, New Jersey 07105 **(hereinafter referred to as the "Night Club" or "Vivo")**.

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Misappropriation of Likeness; d) Unfair Competition/False Endorsement N.J.S.A. 56:4-1, et.seq.; e) Negligence/Respondeat Superior; and f) Unjust Enrichment.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant 167 Ferry St 1 Corp., is a corporation formed under the laws of the state of New Jersey, with its principal place of business located at 167 Ferry St, Newark, New Jersey, 07735. Upon information and belief, 167 Ferry St 1 Corp. operates Vivo, which is located at 167 Ferry St, Newark, New Jersey 07105.

8. Venue is proper in the United States District Court for the District of New Jersey because Defendant's principal place of business is located in Newark, New Jersey, Essex County.

9. A significant portion of the alleged causes of action arose and accrued in Newark, New Jersey and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Newark, New Jersey.

## PARTIES

*Plaintiffs*

10. Plaintiff Jessa Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

11. Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

12. Plaintiff Tiffany Toth a/k/a Tiffany Gray ("Gray") is a well-known professional model, and a resident of Orange County, California.

13. Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

14. Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester, England.

15. Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

*Defendants*

16. Defendant, 167 Ferry St 1 Corp., is a corporation formed under the laws of the state of New Jersey and registered to conduct business in New Jersey. During times relevant to this action, 167 Ferry St 1 Corp. operated Vivo.

17. Service of process may be perfected upon Defendant 167 Ferry St 1 Corp. by serving the registered agent for service of process, Jessica Ciuia, who can be located at 1 Vermekka Way Apt 2086, Union, NJ 07084.

## FACTUAL ALLEGATIONS

18. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

19. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

20. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

21. In the case of each Plaintiff, this apparent claim was false.

22. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

23. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

24. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

*Plaintiffs' Individual Backgrounds and Careers*

25. Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over

3.8 million followers on Facebook, Instagram and X (formerly known as Twitter). [1]

26.     Upon information and belief, Hinton is depicted in the photo in Exhibit "A" to promote Vivo on its Instagram page. This Image was intentionally altered to make it appear that Hinton was either an employee working at Vivo, that she endorsed Vivo, or that she was otherwise associated or affiliated with Vivo.

27.     Hinton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28.     Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,600 Twitter followers.

29.     Upon information and belief, Acosta is depicted in the photo in Exhibit "B" to promote Vivo on its Instagram page. This Image was intentionally altered to make it appear that Acosta was either an employee working at Vivo, that she endorsed Vivo, or that she was otherwise

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

associated or affiliated with Vivo.

30. Acosta has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31. Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368,000 X (formerly known as Twitter) followers.

32. Upon information and belief, Gray is depicted in the photo in Exhibit "C" to promote Vivo on its Instagram page. This Image was intentionally altered to make it appear that Gray was either an employee working at Vivo, that she endorsed Vivo, or that she was otherwise associated or affiliated with Vivo.

33. Gray has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34. Burciaga is a model and a business owner. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to Stuff Magazine. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first

photo shoot, she won Stuff Magazine's, "Neighborhood Knockout," contest. The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night Round 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine, and many others. Burciaga was the Playboy Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series The Girls Next Door. She has various business ventures, including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.4 million followers on Instagram, over 3.2 million Facebook followers, and over 165,000 followers on X (formerly known as Twitter).

35. Upon information and belief, Burciaga is depicted in the photo in Exhibit "D" to promote Vivo on its Instagram page. This Image was intentionally altered to make it appear that Burciaga was either an employee working at Vivo, that she endorsed Vivo, or that she was otherwise associated or affiliated with Vivo.

36. Burciaga has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37. Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as FHM, Nuts, Loaded, The Daily Star, and hundreds of others. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of the Nuts magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest

Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Pinder was also a contestant on Celebrity Big Brother. Pinder starred in films such as The Seventeenth Kind, Age of Kill, and Warrior Savitri. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars years after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and X (formerly known as Twitter).

38. Upon information and belief, Pinder is depicted in the photo in Exhibit "E" to promote Vivo on its Instagram page. This Image was intentionally altered to make it appear that Pinder was either an employee working at Vivo, that she endorsed Vivo, or that she was otherwise associated or affiliated with Vivo.

39. Pinder has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40. Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).

41. Upon information and belief, Sampedro is depicted in the photo in Exhibit "F" to promote Vivo on its Instagram page. This Image was intentionally altered to make it appear that Sampedro was either an employee working at Vivo, that she endorsed Vivo, or that she was otherwise associated or affiliated with Vivo.

42. Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

43. Defendant operates (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

44. Defendant owns, operates, and controls Vivo's social media accounts, including its Facebook, Twitter, and Instagram accounts.

45. Defendant used Vivo's Facebook, Twitter, and Instagram accounts to promote Vivo's , and to attract patrons.

46. Defendant did this for their own commercial and financial benefit.

47. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Vivo, endorsed Vivo, or was otherwise associated or affiliated with Vivo.

48. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Vivo to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

49. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Vivo, and at no point have any of the Plaintiffs ever endorsed Vivo or otherwise been affiliated or associated with Vivo.

50. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

51. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

52. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

53. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

54. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

55. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

56. Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Vivo.

57. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

58. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Vivo.

59. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

60. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

61. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Vivo's website, Twitter, Facebook, or Instagram accounts.

62. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

63. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

64. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

65. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment , or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

66. Thus, this was done in furtherance of Defendant's commercial benefit.

67. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through

secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

68. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

69. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

70. Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's

71. establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

72. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant 'sestablishment.

73. Defendant knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

74. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

75. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

76. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

77. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

78. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

79. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

80. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plantiffs from the conduct described herein. Specifically, the Lanham Act prohibits a

party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

81. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

82. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

83. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

84. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

85. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

86. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

87. Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

88. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

89. Defendant's wrongful conduct as described herein was willful.

90. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

91. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

92. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

93. Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

94. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Misappropriation of Likeness)

95. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

96. Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under New Jersey law, the unauthorized use of a person's image or likeness for a predominately commercial purpose is unlawful.

97. Defendant's use of Plaintiffs' images and likenesses to advertise its business constitutes a use for commercial purposes.

98. Defendant's use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value.

99. Defendant never obtained Plaintiffs' consent for the use of their images and likenesses.

100. Defendant's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

101. As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

102. As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

## FOURTH CAUSE OF ACTION
### (Unfair Competition/False Endorsement N.J.S.A. 56:4-1, *et.seq.*)

103. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

104. The aforesaid acts of Defendant's unauthorized use of Plaintiffs' images and likenesses in connection with creating the false impression that they were affiliated with and endorsed Defendant's business constitutes unfair competition under N.J.S.A. 56:4-1.

105. As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

106. As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

107. Defendant's wrongful and deliberate conduct has caused significant damage to Plaintiffs, both directly and indirectly, and Plaintiffs respectfully request treble damages as authorized by N.J.S.A. 56:4-2.

## FIFTH CAUSE OF ACTION
### (Negligence/Respondeat Superior)

108. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

109. Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of

intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

110.   Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

111.   Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

112.   Similarly, Defendant further owed a duty of care to Plaintiffs to ensure that its promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendant.

113.   Defendant breached its duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

114.   Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and New Jersey law, were not violated. Defendant breached its duty of care to Plaintiffs by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

115.   Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

116.   As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

117. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

118. As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Defendant's establishment to the general public and potential clientele.

119. Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant .

120. Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

121. Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

122. Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to its establishment.

123. Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

124. As such, Plaintiffs have been damaged in an amount to be determined

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Vivo's Night Club;

19

(c)     For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and N.J.S.A. 56:4-2;

(d)     For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and N.J.S.A. 56:4-2;

(e)     For such other and further relief as the Court may deem just and proper.

|  |  |
|---|---|
| OF COUNSEL:<br>John V. Golaszewski, Esquire*<br>THE CASAS LAW FIRM, PC<br>1325 Avenue of the Americas, 28th Floor<br>New York, NY 10019<br>T: 646-872-3178<br>F: 855-220-9626<br>john@talentrights.law | */s/ Gerald B. Baldino, III*<br>Gerald B. Baldino, III, Esquire<br>Attorney I.D. No. 295012019<br>SACCHETTA & BALDINO<br>24 S. Broad Street<br>Woodbury, NJ 08096<br>P: (856) 845-4400<br>F: (856) 845-0400<br>gbaldino@sbattorney.com<br>*Attorney for Plaintiffs* |

Dated: August 21, 2025

*Pro Hac Vice Application Forthcoming*

20